JJ England
Baumstark Braaten Law Partners
109 N 4ᵗʰ St, Suite 100
Bismarck, ND 58501
Tel: 701-221-2911
Fax: 701-221-5842
Email: jj@baumstarkbraaten.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| GIACOMETTO RANCH INC., a Montana Corporation, TOM GIACOMETTO, a resident of Montana, LAWRENCE GIACOMETTO, a resident of Montana, and ROBERT GIACOMETTO, a resident of South Dakota, | ) ) ) ) ) ) ) ) ) ) | Case No. _____ |
| Plaintiffs, | ) ) | COMPLAINT AND JURY DEMAND |
| v. | ) ) | |
| DENBURY ONSHORE LLC, a Delaware Corporation, and DENBURY OPERATING COMPANY, a Delaware Corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## I. INTRODUCTION

1.     This is an action for declaratory relief, damages, and equitable relief arising from Defendants' violation of the Montana Surface Owner Damage and Disruption Compensation Act, breach of contract, illegality of contract, trespass, unlawful occupation of property, nuisance, strict liability, and negligence related to oil drilling and production operations on Plaintiffs' land.

## II. PARTIES

2.     Plaintiffs Lawrence and Tom Giacometto were at all times relevant hereto residents of Powder River County, Montana. Plaintiff Robert Giacometto is a resident of Rapid City, South Dakota. Plaintiff Giacometto Ranch Inc. is a Montana corporation in good standing, incorporated in 1975, with principal place of business in Powder River County, Montana, and whose registered agent is Lawrence Giacometto, 56 So. Boyes Road, PO Box 515, Broadus, MT 59317.

3.     Defendant Denbury Onshore, LLC, is a Delaware limited liability company authorized to do business in the state of Montana. Denbury Onshore, LLC's principal place of business is 5320 Legacy Drive, Plano, TX 75024 and its registered agent in Montana is CT Corporation System, 3011 American Way, Missoula, MT 59808.

4.     Defendant Denbury Operating Company is a Delaware corporation authorized to do business in the state of Montana. Denbury Operating Company's

principal place of business is 5320 Legacy Drive, Plano, TX 75024 and its registered agent in Montana is CT Corporation System, 3011 American Way, Missoula, MT 59808.

5.      Defendants Denbury Onshore, LLC and Denbury Operating Company (together "Denbury") were at all relevant times hereto engaged in oil and gas development in Powder River County, Montana on and near Plaintiffs' land.

### III. JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs Lawrence and Tom Giacometto are residents of Powder River County, Montana, and Plaintiff Giacometto Ranch Inc. is a business incorporated in Montana. Plaintiff Robert Giacometto is a resident of Rapid City, South Dakota. Both defendants are businesses incorporated in Delaware, with principal places of business in Texas. The amount in controversy exceeds $75,000.00.

7.      Venue is proper in the District of Montana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred on the Giacometto Ranch property, located in Powder River County, Montana.

### IV. FACTUAL ALLEGATIONS GENERAL TO ALL COUNTS

8.      Giacometto Ranch Inc. owns nearly 20,000 deeded acres in Powder River County, Montana near Belle Creek. Giacometto Ranch Inc. is owned by Tom

Giacometto, Lawrence Giacometto, and Robert Giacometto (collectively "Giacomettos"). Tom and Lawrence Giacometto are involved in the ranch's day-to-day operations. Tom and Lawrence Giacometto live on this ranch—some of which is original family homestead land—raising cattle, and farming alfalfa, winter wheat and other crops to support their ranch as their ancestors did before them. The specific lands owned by Giacometto Ranch Inc. (hereafter "subject property") are:

T7S. R54E:

S.22 S2NE, W2,SE4
S.23 S2N2,S2
S.24 SWNW, W2SW
S.25 W2NW, SW4
S.26 ALL
S.27 E2SENW, SW4
S.33 N2NE,NW4, W2SW
S.34 E2,SESW
S.35 ALL

T8S. 53E:

S.13 SENE, E2SE
S.15 W2
S.19 E2SE
S.20 S2
S.21 N2N2, W2SW, E2SE
S.22 ALL
S.25 ALL
S.26 S2NE,SE4
S.27 SWNW, W2SW, SESW, SWSE
S.28 W2E2, SENE, NW4, N2SW
S.29 ALL
S.30 E2

S.31 E2NE, NWNE
S.32 N2, N2SW, NWSE
S.33 W2NW
S.34 NESE

T8S. R54E:

S.1 ALL
S.2 ALL
S.3 Lot 1,S2NE, SENW, E2SW, SE4
S.4 E2SW, SE4
S.8 E2
S.9 ALL
S.10 N2NE, NENW, S2N2, S2
S.11 ALL
S.12 N2NE, W2
S.13 W2
S.14 S2NENE, SENE, E2SE
S.15 ALL
S.16 E2 Less 31.474 A., NW4 Less 18.437 A., W2SE, Less 12.99 A.
S.17 NE4, N2SE
S.18 Lot 4
S.19 Lots 1,2,3,4
S.20 NE4, NENW, NESE

S.21 NE4, S2NW, NENW, N2S2,          T9S. R53E:
Less 3.987 A. Less 18.3 A
S.22 NE4, W2, Less 4.48 A. RD.       S.1 NE4, N2NW, NESW, SWNW
S.23 NW4                             S.2 W2NE, NW4, NESW
S.27 N2NW, Less 4.48 A. RD.
S.28 SWNW, S2 Less 15.83 A. RD.
S.29 NWNE, N2NW, S2N2, S2           T9S. R54E:
S.30 ALL
S.31 ALL                            S.5 NENW, W2W2
S.32 E2 Less COS # 121085 Tract 1   S.6 N2, FRL, N2S2, FRL, SWSE
Cont. 20.022 A M/L
S.33 NW4, S2 Less 15.67 A. RD.

9.    On August 23, 1967, John Giacometto and Catherine Giacometto, husband and wife, executed an oil and gas surface use agreement with Sam Gary to certain lands in T8S, R54E ("Gary Agreement").

10.    On July 2, 1968, John Giacometto and Catherine Giacometto (grandparents to Tom Giacometto), husband and wife, executed an easement agreement with Husky Oil Co. ("Husky Agreement") upon all of T7S, R54E and T8S, R54E ("Husky Agreement") to allow construction of oil roads and oil field surface equipment.

11.    The Husky Agreement includes the phrase "location damages," and it does not disclaim these damages.

12.    Denbury recognizes the Gary Agreement and Husky Agreement as being in full force and effect.

13.    In 2002, Encore Energy sent a letter agreement to Catherine Giacometto discussing the Husky Agreement. In the letter agreement, Encore stated "it is our understanding that, as stated in the original Agreement…damage payment amounts, tendered during the annual period being assessed will be credited toward the upcoming rental payment."

14.    Denbury is the current oil operator on the Giacometto property.

15.    Encore Energy is a previous oil operator on the Giacometto property.

16.    Denbury recognizes the Gary Agreement and Husky Agreement as having been assigned to Denbury.

17.    As current operator, Denbury assumed any liability incurred by previous operators on the Giacomettos' property.

## V. OILFIELD WASTE EQUIPMENT, ABANDONED WELLS, ABANDONED ROADS, AND FENCES

18.    Denbury has left oil tanks, unused equipment, trash, and other junk ("oilfield waste equipment") related to oil operations strewn across the property.

19.    This oilfield waste equipment includes tanks, well plugs, useless electrical infrastructure including power poles and lines, unmarked pipes and metal objects protruding from the ground in open pasture, and huts/shacks. Much of this equipment is falling apart and rusting.

20.    Denbury's un-electrified power lines/poles on the property are not necessary to oilfield operations on the property.

21.     Denbury's tanks on the property that have sat unused by Denbury for years are not necessary to oilfield operations on the property.

22.     Denbury's unmarked pipes and metal objects protruding from the ground in the Giacomettos' open pasture are not necessary to oilfield operations on the property.

23.     Denbury's huts/shacks on the Giacomettos' property that have sat unused for years are not necessary to oilfield operations on the property.

24.     Denbury's trash and junk on the Giacomettos' property that has sat unused for years are not necessary to oilfield operations on the property.

25.     This oilfield waste equipment poses a safety hazard to the Giacomettos, their hired hands, visitors to the Giacomettos' property, and their livestock.

26.     To date, Denbury has not removed this oilfield waste equipment from the Giacomettos' property.

27.     Denbury has, on numerous occasions, left small openings in fences surrounding its oilfield shacks large enough for cattle to enter. These locations are dangerous to the Giacomettos' cattle, because once the cattle enter, they are often unable to leave the location without assistance.

28.     The Giacomettos have complained to Denbury about the fences around its oilfield shacks, but they have not all been fixed.

29.    These dangerous fences disrupt the Giacomettos' ranching operations and have caused damage to the Giacomettos' ranching business.

30.    Denbury has abandoned two roads on the Giacometto property and has not reclaimed either of these roads. The first road is located near well site 56-08. The second road is located near well sites 23-05 and 23-12.

31.    Tom Giacometto asked Kevin Anderson, Denbury's representative to the Giacometto Ranch, to reclaim the roads described in Paragraph 30.

32.    Kevin Anderson responded to requests to reclaim the roads in paragraph 30 with the response, "they are part of the infrastructure." Denbury believes the roads described in Paragraph 30 are necessary to its operations on the surface of the Giacomettos' property.

33.    The roads described in Paragraph 30 are not necessary to oil and gas production operations on the Giacomettos' property.

34.    When Denbury became an operator on the Giacometto property, it promised the Giacomettos that it would clean up the mess on the property and be a responsible operator. Denbury has failed to keep that promise.

## VI. HARM CAUSED BY THE MINNELUSA 4 WELL

35.    The Minnelusa 4 site, developed in 2014, represents a serious failure of judgment on Denbury's part.

36.    The Minnelusa 4, API # 25075224420000, was spudded on 11/23/2014.

37.    The Minnelusa 4 is an injection well for production waste fluid.

38.    The Minnelusa 4 was constructed on a forested hillside on the Giacomettos' property over the Giacomettos' strenuous objections.

39.    The Giacomettos' property includes a water reservoir in a valley immediately below the Minnelusa 4 location. The hillside naturally drains into this reservoir.

40.    To construct the Minnelusa 4, Denbury cleared, leveled, and graded approximately 4.66 acres of the forested hillside surrounding the final well location.

41.    Denbury estimated that construction of the Minnelusa 4 downed 620 trees/acre, for a total of approximately 2,889 trees. These trees consisted of a mature, fully stocked stand of healthy ponderosa pine, and also included lesser quantities of other trees and understory.

42.    Denbury stockpiled at least fifty marketable dimension trees from this location and left the trees to rot.

43.    Denbury also cut an ineffective new drainage into this hillside. Since construction of the Minnelusa 4 site, the Giacometto's reservoir has dried up.

44.     Further, Denbury allowed erosion to flow off of the Minnelusa 4 site, down the hillside, and into the reservoir located below.

45.     None of the damage caused by Minnelusa 4 was necessary. A nearby abandoned well site existed that could have been converted into a saltwater disposal well.

46.     After spudding this well on 11/23/2014, Denbury has never operated the Minnelusa 4 well.

47.     Denbury offered the Giacomettos only $1,700/acre for this significant and needless damage. To date, Denbury has provided no compensation for the actual damage it caused at the Minnelusa 4 site.

## VII. OIL AND PRODUCED WATER SPILLS CAUSED BY DENBURY

48.     On or about September 2, 2016, Denbury spilled 47,880 gallons of produced water and 20 gallons of oil on the Giacomettos' property ("September 2 spill").

49.     The September 2 spill occurred between 500 and 1,000 feet from Tom Giacometto's house and drinking water wells. The spill was caused by a rupture in the Minnelusa 3 flowline. Less than 10% of this fluid was recovered.

50.     The September 2 spill impacted Wright Creek, and the spill flowed directly down this creek.

51.   The September 2 spill damaged the surface of the Giacomettos' property and water resources on the property.

52.   The Giacomettos fear that their domestic water supply may become unusable due to the September 2 spill.

53.   On or about July 12, 2016, Denbury spilled 1,260 gallons of produced water and 84 gallons of oil on the Giacomettos' property near well location 15-03 (hereafter "July 12 spill"). None of this fluid was recovered.

54.   The July 12 spill damaged the surface of the Giacomettos' property and water resources on the property.

55.   On or about November 12, 2015, Denbury spilled at 162 gallons of produced water and 42 gallons of oil on the Giacomettos' property near well location 29-08 (hereafter "November 12 spill"). The spill was caused by a tank overflow. None of this fluid was recovered.

56.   The November 12 spill damaged the surface of the Giacomettos' property and water resources on the property.

57.   Apart from the September 2, July 12, and November 12 spills, Denbury has had no less than thirteen additional spills and leaks on the Giacomettos' property since it became an operator on this property. Collectively, these sixteen incidents in total include $CO_2$ leaks, oil spills, and produced water spills.

58.    Of these sixteen total incidents, at least twelve were caused by flow-line breaks or ruptures.

59.    Denbury has acted with actual malice toward the Giacomettos. Denbury had actual knowledge that its flow-lines were defective and dangerous based upon the pattern of line ruptures and breaks on the Giacometto property. Denbury intentionally disregarded the high probability of injury to the Giacomettos and continued operating these defective lines. This culminated in the September 2 spill, which has now impacted a creek, threatens the Giacomettos' drinking water, and has disrupted the Giacomettos' repose at their nearby home.

## VIII. EROSION DAMAGE

60.    Denbury is responsible for, and has failed to reclaim, erosion near well-site 32-05. This erosion has cut a channel through the property, making the property impassable.

61.    Denbury is responsible for, and has failed to reclaim, erosion near well site 31-09. This erosion has damaged the property's surface, rendering the ground bare and unproductive.

62.    Denbury is responsible for, and has failed to reclaim, erosion and associated dirt piles near well sites 16-09 and 16-09PA. This erosion has caused damage to the property's surface and has rendered pasture less productive in this location.

63.     Denbury is responsible for, and has failed to reclaim, erosion adjacent to well site 16-16 and the associated entrance road. This erosion has caused a deep cut in the property, causing damage to the property.

64.     Denbury is responsible for, and has failed to reclaim, erosion near the Minnelusa 2 (formerly Madison 2) well. This erosion has caused damage to the surface of the property and has rendered the pasture less productive in this location.

65.     Denbury is responsible for, and has failed to reclaim, erosion on and adjacent to well pad 15-06. This erosion has caused damage to the surface of the property, rendering pasture less productive in this location. It has also caused sediment to wash into surface waters below this well location. After repeated requests from the Giacomettos to fix this issue, this problem has not been resolved.

66.     Denbury is responsible for, and has failed to reclaim, erosion on and adjacent to the Madison 3 well pad. This erosion has caused damage to the property's surface and has rendered pasture less productive in this location.

## IX. WEEDS

67.     Denbury's operations have introduced weeds onto the Giacomettos' property.

68.     Denbury introduced thistle to well sites 15-06 and Minnelusa 4. This land was previously pristine land, and this thistle has caused damage to the Giacomettos' business and property.

69.     Denbury's operations have introduced kochia weed onto the property along its lease roads. Denbury also introduced a two acre stand of kochia weed in the Giacomettos' alfalfa field near a location commonly known as test site #1. This weed introduction has caused damage to the Giacomettos' business and property.

70.     In May of 2016, Denbury allowed a contractor to spray sterilant on the Giacomettos' property to control weeds. This sterilant permanently killed productive grasses adjacent to the Minnelusa 4 site and Test Site 1. This ground kill caused damage to the Giacometto property.

## X. FIRST CLAIM FOR RELIEF: VIOLATION OF MONTANA SURFACE OWNER DAMAGE AND DISRUPTION COMPENSATION ACT (SODDCA), MCA §§ 82-10-504, 82-10-505

71.     Plaintiffs hereby incorporate all previous paragraphs.

72.     MCA § 82-10-504 states that "[t]he oil and gas developer or operator shall pay the surface owner a sum of money or other compensation equal to the amount of damages sustained by the surface owner for loss of agricultural production and income, lost land value, and lost value of improvements caused by oil and gas operations."

73.    MCA § 82-10-505 states that "[t]he oil and gas developer or operator is responsible for damages to real or personal property caused by oil and gas operations and production."

74.    As required by MCA § 82-10-506, the Giacomettos gave Denbury "written notice" of the following damages:

   a.  Minnelusa 4 site disturbance: $25,000;

   b.  Minnelusa 4 site annual rental: $2,750/year;

   c.  Minnelusa 4 site, marketable trees removed: $121,250;

   d.  Minnelusa 4 site, smaller trees removed: $150,000;

   e.  Lost alfalfa production due to failed reclamation of field near test site 1: $400;

   f.  Annual damage payments for roads constructed on the Giacomettos' property: $3/rod;

   g.  Attorney's fees for negotiation of reasonable compensation: $250/hour.

75.    The damages for the Minnelusa 4 site amount to at least $301,750.

76.    In response to the Giacomettos' letter, Denbury claimed that it was only obligated to pay the amount stated in the Husky Agreement: $100/year for each producing well. Therefore, Denbury refused to provide meaningful, adequate compensation in response to the Giacomettos' letter.

77.     MCA § 82-10-508 states that "[i]f the person seeking compensation receives a written rejection, rejects the offer of the oil and gas developer or operator, or receives no reply, that person may bring an action for compensation…" The Giacomettos received a written letter of rejection from Denbury, and the Giacomettos further reject any offer made by Denbury to the extent that such an offer was made.

78.     Denbury to date has not provided actual compensation for the damage to the Giacomettos' property described in Paragraph 74 that has occurred within the last two years. Plaintiffs affirmatively allege that Denbury is liable for these damages pursuant to MCA § 82-10-504 and MCA § 82-10-505.

## XI. SECOND CLAIM FOR RELIEF: BREACH OF CONTRACT

79.     Plaintiffs hereby incorporate all previous paragraphs.

80.     Denbury is bound by the provisions of the Husky Agreement, a contract in full force and effect.

81.     The Husky Agreement requires payment of damages for "drill sites" and "location damages."

82.     These damages for "drill sites" and "location damages" are separate and distinct from the payment of $100 annually per producing well, which is compensation for use as opposed to compensation for damage.

83.    Denbury has not paid the Giacomettos actual damages for "drill sites" and "location damages" for each of the following wells, as well as all related access roads, constructed by Denbury:

     a.  Well location 33-14R;

     b.  Well location 33-09R;

     c.  Well location 31-16;

     d.  Well location 15-02 (Minnelusa 4);

     e.  Well location 15-06.

84.    Instead, Denbury offered less than reasonable compensation for each of these wells and cited to the $100 per producing well annual payment as indication that its offers were in fact generous. The Giacomettos rejected each of these offers.

85.    Because Denbury has not paid the Giacomettos for "drill site" and "location damages" as required by the Husky agreement, Plaintiffs affirmatively allege that Denbury is in material breach of this agreement.

## XII. THIRD CLAIM FOR RELIEF: VIOLATION OF SODDCA, MCA § 82-10-504.

86.    Plaintiffs hereby incorporate all previous paragraphs.

87.    This Claim Three is expressly pled in the alternative to Claim Two.

88.     MCA § 82-10-504 requires the oil and gas operator to "attempt to negotiate in good faith an agreement on damages" for all damages arising from oil and gas operations on the surface of a property subsequent to June 1, 1981.

89.     Denbury has not attempted to negotiate a good faith agreement on damages with the Giacomettos. Instead, Denbury insists that the Husky Agreement and Gary Agreement are in effect and interprets these agreements to not require compensation for actual damages.

90.     Plaintiffs affirmatively allege that Denbury is in violation of MCA § 82-10-504, which requires it to "attempt to negotiate in good faith an agreement on damages" with the Giacomettos for all damages arising after June 1, 1981.

### XIII. FOURTH CLAIM FOR RELIEF: VIOLATION OF MCA § 28-2-701, CONTRACT ILLEGAL AND IN VIOLATION OF PUBLIC POLICY

91.     Plaintiffs hereby incorporate all previous paragraphs.

92.     This Claim Four is expressly pled in the alternative to Claim Two and Claim Three.

93.     Denbury has constructed roads and well sites without providing the Giacomettos payment for actual damages.

94.     Denbury has asserted that it is only required to pay the amounts stated in the Gary Agreement and the Husky Agreement as complete compensation for all

damages sustained. This is equivalent to $100 per producing well each year and a one-time payment of $300 for each new oil well.

95.    Denbury claims the right to undertake any surface activities necessary to its oil and gas operations on the Giacomettos' ranch in exchange for these payments.

96.    The Giacomettos' property is crisscrossed with roads, pipelines, oil wells, and damage caused by oil drilling and production operations.

97.    The Giacomettos and their property are bound to and burdened by the Gary Agreement and the Husky Agreement, which together allow for miniscule compensation in exchange for this extensive damage.

98.    These contracts are contrary to SODDCA's express provisions, SODDCA's purpose, and good morals, and therefore the Giacomettos affirmatively allege that these contracts are illegal and in violation of public policy under MCA § 28-2-701.

## XIV. FIFTH CLAIM FOR RELIEF: TRESPASS FOR TRASH, WASTE, AND USELESS EQUIPMENT NOT REASONABLY RELATED TO OIL OPERATIONS

99.    Plaintiffs hereby incorporate all previous paragraphs.

100.    Denbury has left trash, waste, debris, and abandoned materials strewn throughout the Giacometto Ranch property. These materials have no useful purpose for oil operations, and include tanks, well plugs, unused electric

infrastructure including power poles and lines, unmarked/unused pipes and metal objects protruding from the ground in open pasture, and unused huts/shacks.

101.   These materials are the property of Denbury.

102.   Denbury has no lawful authority to allow property to remain on the Giacometto Ranch that is not necessary for oil operations.

103.   Denbury does not have the permission of the Giacomettos to allow these materials to remain on the property.

104.   Denbury has intentionally left these materials on the ranch and has not removed these items, causing damage to the Giacomettos in an amount to be proved at trial.

105.   Plaintiffs affirmatively allege that Denbury's actions constitute trespass of a continuing and ongoing nature.

## XV. SIXTH CLAIM FOR RELIEF: VIOLATION OF MCA § 27-1-318, UNLAWFUL OCCUPATION OF PROPERTY

106.   Plaintiffs hereby incorporate all previous paragraphs.

107.   Denbury's trash, waste, debris, and abandoned materials are also an unlawful occupation of the Giacomettos' property.

108.   Denbury has not paid the Giacomettos for the loss of use caused by this wrongful occupation.

109.   The Giacomettos affirmatively allege that Denbury's trash, waste, debris, and abandoned materials left on the Giacometto property are an unlawful occupation of the Giacomettos' property in violation of MCA § 27-1-318.

## XVI. SEVENTH CLAIM FOR RELIEF:
## MCA § 27-30-103, NUISANCE

110.   Plaintiffs hereby incorporate all previous paragraphs.

111.   Denbury's trash, waste, debris, and abandoned materials are an obstruction to the Giacomettos' free use of their property, and they interfere with the comfortable enjoyment of their property.

112.   Denbury has additionally left fencing open around well sites that allows cattle to enter these well sites, but makes it difficult for cattle to leave, thus disrupting the Giacomettos' ranch. These fences are an obstruction to the Giacomettos' free use of their property, and they interfere with the comfortable enjoyment of their property.

113.   Denbury has additionally allowed erosion to occur on the property. This erosion has created dangerous conditions on the property, rendered parts of the property impassable, and caused sediment to wash off the surface of the property, rendering the land unproductive. This erosion is an obstruction to the Giacomettos' free use of their property, and it interferes with the comfortable enjoyment of their property.

114.   Denbury has additionally introduced weeds onto the property, where previously there were none. These weeds are an obstruction to the Giacomettos' free use of their property, and they interfere with the comfortable enjoyment of their property.

115.   Plaintiffs affirmatively allege that Denbury's trash, waste, debris, abandoned materials, open fences around its well sites, erosion caused by Denbury, and introduction of weeds to the property are private nuisances pursuant to MCA § 27-30-103. The Giacomettos are injuriously affected and their personal enjoyment is lessened by these nuisances. This injury has caused harm to the Giacomettos in an amount to be proved at trial.

## XVII. EIGHTH CLAIM FOR RELIEF: STRICT LIABILITY

116.   Plaintiffs hereby incorporate all previous paragraphs.

117.   Handling, transporting, and storing oil and its byproducts, including produced water, is an abnormally dangerous activity.

118.   Spraying ground sterilant on land is an abnormally dangerous activity.

119.   Because handling, transporting, and storing of oil and its byproducts is an abnormally dangerous activity, Denbury is strictly liable for damage caused by these activities.

120.   Because spraying ground sterilant on land is an abnormally dangerous activity, Denbury is also strictly liable for any harm caused by use of ground sterilant.

121.   The September 2, July 2, and November 12 spills were the result of Denbury's operations in which it handled, transported, and stored oil and its byproducts, including produced water. These spills caused damage to the Giacomettos' property in an amount to be proved at trial.

122.   Additionally, Denbury allowed its contractor to spray ground sterilant on the Giacomettos' property at the Minnelusa 4 site. This sterilant permanently killed productive grasses, causing damage to the Giacomettos' property in an amount to be proved at trial.

123.   Plaintiffs affirmatively allege that Denbury is strictly liable for the damage caused by its September 2, July 2, and November 12 spills and spraying of sterilant at the Minnelusa 4 site and Test Site 1.

## XVIII. NINTH CLAIM FOR RELIEF: NEGLIGENCE

124.   Plaintiffs hereby incorporate all previous paragraphs.

125.   This claim is pled expressly in the alternative to claim eight (strict liability).

126.   Denbury owed a duty of ordinary care to the Giacomettos.

127.   Denbury caused the September 2, July 2, and November 12 spills on the Giacomettos' property.

128.   Denbury breached its duty of ordinary care to the Giacomettos for each of these three spills by:

    a. Failing to construct these facilities to properly contain produced water and oil;

    b. Failing to install adequate failsafe systems to prevent oil and produced water leaks;

    c. Failing to keep these facilities in good repair; and

    d. Failing to adequately monitor these facilities for maintenance concerns.

129.   These spills caused damage to the Giacomettos' property in an amount to be proved at trial.

130.   Additionally, Denbury allowed its contractor to spray sterilant on the Giacomettos' property at the Minnelusa 4 site and Test Site 1 that flowed off these locations and permanently killed productive grasses.

131.   Denbury breached its duty of care to the Giacomettos by failing to take adequate measures to ensure that these chemicals were safely applied to the Giacomettos' property.

132.   The Giacometto Ranch suffered damage from this misuse of sterilant of an amount to be proved at trial.

133.   Plaintiffs affirmatively allege that Denbury was negligent and is therefore liable to the Giacomettos for damage caused by the September 2, July 2, and November 12 spills as well as damage caused by spraying of sterilant at to the Minnelusa 4 site and Test Site 1.

## XIX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests relief from this Court as follows:

I.      Compensatory damages in an amount to be proven at trial;

II.     Punitive damages in an amount to be proven at trial;

III.    Declaratory and injunctive relief;

IV.     Rescission of the Gary and Husky Agreements, modification of the Gary and Husky Agreements, or declaration that the Gary and Husky Agreements are void;

V.      Declaration that Denbury is in material breach of contract;

VI.     Costs and reasonable attorney's fees;

VII.    Such other relief as this Court deems just and equitable.

## XX.  DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action as to all issues so triable.

Dated this 24th day of September, 2016.

**BAUMSTARK BRAATEN LAW PARTNERS**
*Attorneys for Plaintiffs*
109 North 4th Street, Suite 100
Bismarck, ND 58501
Telephone:  701-221-2911
Fax:  701-221-5842

By:  _/s/ JJ England_____
JJ England (MT ID No. 35221359)