IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GIACOMETTO RANCH INC. a Montana Corporation, TOM GIACOMETTO, a resident of Montana, and ROBERT GIACOMETTO, a resident of South Dakota,<br><br>        Plaintiffs,<br><br>vs.<br><br>DENBURY ONSHORE LLC, a Delaware Corporation, and DENBURY OPERATING COMPANY, a Delaware Corporation,<br><br>        Defendants. | CV 16-145-BLG-SPW-KLD<br><br>FINDINGS AND RECOMMENDATION |

Plaintiffs Giacometto Ranch, Inc., Tom Giacometto, and Robert Giacometto ("Giacomettos" or "Plaintiffs") bring this action against Denbury Onshore LLC and Denbury Operating Company ("Denbury") alleging multiple claims related to Denbury's oil production operations on Plaintiffs' land. Currently pending before the Court is Denbury's Motion for Partial Summary Judgment (Doc. 50) and Plaintiffs' Motion to Deny or Stay Defendants' Motion for Partial Summary Judgment (Doc. 60).

1

## I.     Background

Denbury is an oil and gas production company organized under the laws of Delaware, with its principal place of business located in Plano, Texas. Denbury conducts oil production operations in the Bell Creek Field in southeastern Montana, and is the operator of the oil and gas wells on Giacometto Ranch and of the Bell Creek (Muddy) Unit.

Giacometto Ranch is a 20,000-acre cattle and farming ranch located in Powder River County, Montana. The Bell Creek Field overlaps some of the Giacometto property. The ranch is owned by Plaintiffs Tom, Lawrence, and Robert Giacometto, and is operated by Tom and Lawrence. (Doc. 43 at 4.) The ranch was created in 1975 when the Giacometto family pooled their individually owned land and deeded it to the ranch. The deeds creating the ranch severed the surface estate from the mineral estate, reserving the minerals beneath the surface of the property to individual members of the Giacometto family and granting the surface estate to the ranch. (Doc. 59-1 at ¶ 22.)

When the Giacomettos severed the mineral and surface estate, ownership of the pore space beneath the surface of the land was not specifically reserved to Giacometto Ranch. But because nothing in the severance documents contradicted the presumption that the surface estate owns the pore space, the pore space belongs

to Giacometto Ranch. Mont. Code Ann. § 82-11-180(3); *Burlington Resources Oil & Gas Co., LP v. Lang and Sons Inc.*, 259 P.3d 766 at ¶¶ 23-24 (Mont. 2011). The parties do not dispute this point.

Beginning in 1966, the Giacometto family began leasing some of their mineral interests in the property to Denbury's predecessors in interest for oil and gas production. (Doc. 59-1 at ¶ 1.) The first lease covered 3,040 acres of land and was entered between John and Catherine Giacometto and Samuel Gary. The lease remains in effect. (Doc. 59-1 at ¶ 1 & Docs. 43-2, 43-3.) On June 15, 1967, John and Catherine executed an Amendment to the lease they entered with Samuel Gary. (Doc. 59-1 at ¶ 2.) The Amendment added 80 acres to the leased acreage. (Doc. 59-1 at ¶ 2 & Doc. 43-4.) On August 23, 1967, John and Catherine executed another agreement with Samuel Gary covering additional land. The parties refer to this agreement as the "Gary Agreement." (Doc. 59-1 at ¶ 3 & Doc. 43-5.) The Gary Agreement allowed Samuel Gary to use the surface of the property in connection with oil and gas operations. (Doc. 59-1 at ¶ 3 & Doc. 43-5 at 2.)

On July 2, 1968, John and Catherine granted an Easement Agreement to Husky Oil Company ("Husky"). (Doc. 59-1 at ¶ 4.) The Easement Agreement granted Husky the right to use and construct infrastructure on the surface of the property for its oil and gas operations. (Doc. 59-1 at ¶ 5 & Doc. 43-6.) The

Easement Agreement also called for damages payments for Husky's use of the surface. (Doc. 59-1 at ¶ 5 & Doc. 43-6.)

In 1991, the Bureau of Land Management ("BLM") and the Montana Board of Oil and Gas Commissioners ("MBOGC") approved the Bell Creek Consolidated (Muddy) Unit Agreement ("Unit Agreement"). (Doc. 59-1 at ¶ 6 & Doc. 43-8.) The Unit Agreement covers lands owned by the Giacomettos and was ratified by John and Catherine Giacometto. (Doc. 59-1 at ¶ 10.) The 1996 and June 15, 1967 Oil and Gas leases with Samuel Gary are part of and included with the Unit Agreement. (Doc. 59-1 at ¶ 12.)

Denbury operates the Bell Creek Unit and is the current lease holder of the rights to oil and gas beneath Giacometto Ranch. (Doc. 59-1 at ¶ 15.) In 2013, Denbury began enhanced oil recovery ("EOR") operations in the Bell Creek Unit. (Doc. 59-1 at ¶ 16.) Denbury's EOR operations consist of injecting carbon dioxide underground through injection wells. The carbon dioxide injection process increases the movement of oil and results in increased oil production. (Doc. 59-1 at ¶ 17.) The parties dispute whether another purpose of Denbury's carbon dioxide injection is permanent carbon dioxide sequestration. (Doc. 59-1 at ¶¶ 19, 29.)

Plaintiffs also allege Denbury is using their pore space to develop federally

funded research and intellectual property.[1]  (Doc. 59 at 12.) These issues were

briefly discussed at the motions hearing held in this matter, but they were not

asserted in Plaintiffs' Second Amended Complaint. On July 14, 2020, Plaintiffs

filed a Motion to Amend Complaint to add factual allegations in support of their

unjust enrichment claim related to Denbury's alleged profiteering from its

participation in the federally funded research and intellectual property

development. (Doc. 76.) The new factual allegations do not save the claims

discussed in this Findings and Recommendation. However, to the extent they are

viable and the Motion to Amend is granted, the allegations may move forward in

this action.

The Giacomettos assert 17 claims seeking injunctive relief and damages for

Denbury's use of the surface estate, alleged breach of the lease agreements, and

violation of Montana's Surface Owner Damage and Disruption Compensation Act

("SODDCA"). Denbury's Motion for Partial Summary Judgment, however,

---

[1] Specifically, Plaintiffs contend the United States Department of Energy ("DOE") is funding carbon dioxide sequestration research on their property. Plaintiffs allege Denbury, in furtherance of the research agreements it has entered with the DOE, has provided third parties unauthorized permission to access Plaintiffs' property, including their pore space. Plaintiffs also argue that Denbury is receiving compensation for participating in the research while Plaintiffs are not and have never given permission for the research to be conducted on their pore space.

concerns only three of the Giacomettos' claims: (1) trespass for intentional use of pore space (Count 8); (2) unjust enrichment (Count 13); and (3) ejectment (Count 16). These claims focus on Denbury's use of the subterranean pore space beneath Giacometto Ranch.

The Giacomettos argue Denbury is permanently and exclusively injecting carbon dioxide into their pore space, without legal right. In their request for partial summary judgment, Denbury seeks a declaration that it has the right to reasonable use of the mineral estate and the surface estate, including the pore space, to conduct its oil and gas operations. Denbury also requests the Court find that if Plaintiffs are entitled to any damages for use of the pore space, the damages would be calculated based on the detriment to Plaintiffs for loss of the pore space rather than the benefit obtained by Denbury from using the pore space.

In response to Denbury's motion, Plaintiffs argue disputed material facts exist precluding summary judgment. Plaintiffs also filed a Rule 56(d) motion requesting the Court either deny or defer considering Denbury's motion until the close of discovery. (Doc. 60.) Plaintiffs argue they cannot present facts to adequately support their opposition to Denbury's motion because Denbury has refused to provide information in discovery.

/ / /

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing*

*Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## III. Discussion

Denbury argues it is entitled to summary judgment in its favor on Plaintiffs' claims for trespass, unjust enrichment, and ejectment because Denbury has the legal and contractual right to reasonable use of the mineral estate and the surface estate for its oil and gas operations. Denbury additionally argues that Plaintiffs' claims are not ripe for adjudication because they are premised on Denbury's alleged permanent sequestration of carbon dioxide in Plaintiffs' pore space. Because Denbury's EOR operations are ongoing and Plaintiffs' allegation that Denbury is currently engaged in the permanent sequestration of carbon dioxide is unsupported by "specific facts showing that there is a genuine issue for trial[,]" Denbury argues Plaintiffs' claims are speculative and premature. *Celotex*, 477 U.S at 324.

### A.   Trespass to Pore Space (Count 8)

Denbury first argues that the undisputed evidence establishes that Denbury has the legal right to use the Giacometto Ranch surface estate, including its pore

space, to produce oil and gas. Denbury seeks a ruling that "it has the right to the reasonable use of Plaintiffs' pore space." (Doc. 65 at 13.) As discussed at the hearing and as articulated in Plaintiffs' briefing, Plaintiffs do not dispute that Denbury may reasonably use the pore space. Nevertheless, the fact that Denbury may reasonably use Plaintiffs' pore space does not preclude a claim for trespass. For the following reasons, however, the Court finds Plaintiffs have failed to establish a genuine issue of fact exists as to whether Denbury is currently permanently storing carbon dioxide in the pore space. Due to Plaintiffs' inability to establish a factual dispute as to permanence, the Court also finds Plaintiffs' trespass claim is not ripe for adjudication. Summary judgment should therefore be entered in Denbury's favor.

Pore space is the geologic storage reservoir below the surface of land. "Imagine a split bone . . . the inside is spongy, or cancellous; between the mesh-like sheets and spikes of bone are tiny cavities filled with marrow . . . Between the physical matter of the rock structure are tiny spots of interspersed vacuity known as pores, which together create the pore space of the rock." Tara K. Righetti, *Correlative Rights and Limited Common Property in the Pore Space: A response to the Challenge of Subsurface Trespass in Carbon Capture and Sequestration*, 47 Envtl. L. Rep. News & Analysis 10420, 10423 (2017). The pore space acts as a

reservoir which can be used for storing carbon dioxide in addition to other substances. Righetti, at 10423.

Under Montana law, pore space is presumed to belong to the surface estate. *Burlington*, 259 P.3d 407, ¶ 24; Mont. Code Ann. §§ 82-11-180(3) & 70-16-101. The holder of the mineral estate, however, has "the dominant estate under Montana law." *Crow Tribe of Indians v. Peters*, 835 F. Supp. 2d 985 (D. Mont. 2011). Where express language granting the lessee reasonable access to the surface is absent from the lease, such right is implicit. Mont. Code Ann. §§ 82-10-501 to 82-10-511; *Pinnacle Gas Res., Inc. v. Diamond Cross Props., LLC*, 201 P.3d 160, ¶¶ 29-30 (Mont. 2009). The mineral interest holder therefore has a right to enter and "use reasonably the surface estate in the production of the mineral." *Burlington*, at ¶ 25 (citing *Hunter v. Rosebud Co.*, 783 P.2d 927, 929 (Mont. 1989)).

It is undisputed that Giacometto Ranch is the surface estate owner and Denbury leases the rights to oil and gas beneath the ranch. It follows that Denbury has the right to enter and reasonably use the pore space belonging to the surface estate in its production of oil. Plaintiffs do not dispute this point.[2] (Doc. 59 at 24-26, 40.) Plaintiffs' trespass for intentional use of pore space claim is based on

---

[2] "The oil and gas leases convey only a limited implied right to use the pore space as reasonable to produce oil." (Doc. 59 at 40.)

Denbury's allegedly "permanent and exclusive injection of carbon dioxide into the Bell Creek Field[.]" (Doc. 43 at 29-29.) Resolving this claim would typically turn on whether Denbury's alleged permanent storage of carbon dioxide in the pore space is a reasonable exercise of its mineral rights. Here, however, Denbury has demonstrated that it does not permanently store carbon dioxide in Plaintiffs' pore space. (Doc. 52-2.) Plaintiffs have failed to adequately refute Denbury's evidence and establish a genuine issue of material fact exists as to Denbury's alleged permanent sequestration of carbon dioxide. Because Plaintiffs' claim rests on the existence of this unsupported fact, it fails as a matter of law.

The Court acknowledges that although Denbury has a right to use Plaintiffs' pore space to develop oil and gas, it does not follow that Denbury has unfettered discretion to use the pore space. Denbury's use is limited to purposes that are reasonably necessary to produce oil. The "reasonably necessary" determination is a fact question the jury must resolve. *See Burlington*, at ¶ 33 (acknowledging trespass claim but declining to address its viability on appeal); Mont. Code Ann. § 82-10-511 (SODDCA remedies "do not preclude any person from seeking other remedies allowed by law"); *Moser v. Denbury Resources, Inc.*, 112 F. Supp. 3d. 906, 918 (D.N.D. 2015) (trespass claim based on allegation that conduct exceeded express or implied authorized right to use survives summary judgment).

11

Here, Plaintiffs' claim for trespass to pore space cannot be presented to the jury for a reasonableness determination because the basis of Plaintiffs' claim, that Denbury is permanently storing carbon dioxide in the pore space, is unripe and speculative. First, it is undisputed that Denbury is currently engaged in EOR operations involving the daily insertion of carbon dioxide into Plaintiffs' pore space to produce oil. (Doc. 59-1 at ¶¶ 16-17.) The actual amount of carbon dioxide in the pore space is fluid and changes frequently with Denbury's EOR operations. (Doc. 73 at 10-12.) Denbury predicts its EOR operations will continue for at least seven to ten years. (Doc. 73 at 10.) At this point in the EOR operations, neither Denbury nor Plaintiffs know if Denbury will remove the remaining carbon dioxide from Plaintiffs' pore space at the conclusion of Denbury's production operations. (Doc. 73 at 11-12.) In the meantime, Denbury intends to continue injecting carbon dioxide into Plaintiffs' pore space to pressurize the Bell Creek Field and produce oil. Plaintiffs' claim that Denbury is permanently injecting carbon dioxide into the Bell Creek Field is therefore premature.

Second, Plaintiffs have failed to adequately refute Denbury's contention that it is not permanently storing carbon dioxide. Denbury has provided the sworn affidavit of Dan Cole stating, in pertinent part, that (1) the purpose of Denbury's injection of carbon dioxide into the pore space is to produce oil, not to sequester

carbon dioxide in the pore space; (2) Denbury either owns or purchases the carbon dioxide used for its EOR operations and pays to have carbon dioxide transported by pipeline to the Bell Creek Unit; and (3) Denbury is not paid by others to sequester carbon dioxide in the pore space by injecting it into Plaintiffs' pore space. (Doc. 52-2 at ¶¶ 6-8.) Denbury has satisfied its burden of demonstrating the absence of any genuine issue of material fact. *Anderson*, 477 U.S. at 251 (the movant's burden is satisfied where documentary evidence permits only one conclusion).

As the party opposing summary judgment, Plaintiffs must present evidence establishing a genuine issue of fact to be resolved at trial. Plaintiffs have failed to do so. Although Plaintiffs support their opposition to Denbury's motion with a litany of exhibits, none of the exhibits indicate that Denbury is currently sequestering carbon dioxide in the pore space beneath Giacometto Ranch. *See* Docs. 59-1 – 26. For example, Plaintiffs rely on the declaration of Paul Button, a consulting petroleum engineer who opines that the level of scientific analysis conducted on Plaintiffs' pore space is unnecessary to the production of oil. (Doc. 59-20 at ¶ 8.) Button further opines that the research and analysis that EERC is performing on the Bell Creek Field indicates "that Denbury intends to permanently sequester [carbon dioxide] in the Giacomettos' pore space[.]" (Doc. 59-20 at ¶ 8.)

The declaration of Paul Button is speculative and does not refute the sworn statements of Dan Cole stating that Denbury is not permanently sequestering carbon dioxide in Plaintiffs' pore space. The declaration merely opines that because the research conducted on the Bell Creek Field focuses, in part, on the viability of carbon dioxide sequestration, it may follow that Denbury intends to permanently sequester carbon dioxide. (Doc. 59-20 at ¶ 8.) Mr. Button makes assumptions about Denbury's future operations to reach this conclusion. For example, Mr. Button states, "I don't expect Denbury to complete a blowdown operation here because it appears that Denbury intends to perpetually store [carbon dioxide] in the pore space of the Bell Creek Field." (Doc. 59-20 at ¶ 8.) Although the Court must view the declaration in the light most favorable to the Plaintiffs, the Court cannot find a sworn statement to be adequately refuted by a speculative opinion about what Denbury may or may not do in the future.

Finally, Plaintiffs cite to a report prepared by the Energy and Environmental Research Center ("EERC") which is part of a federal-grant research project involving the Bell Creek Field. The report estimates that at the conclusion of Denbury's EOR operations 12.7 million tons of carbon dioxide will be stored in the Bell Creek subsurface. (Doc. 59-3 at 26.) The report fails to refute Denbury's sworn statement that it is not permanently sequestering carbon dioxide because the

report was not completed by Denbury, it is explicitly speculative, and it predicts a future occurrence rather that establishes a current predicament.[3]  Plaintiffs' claims based on permanent sequestration are therefore factually unsupported. Plaintiffs cannot satisfy their burden of showing genuine issues exist for trial by submitting evidence comprised of conclusory and speculative assertions. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) ("the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.").

Summary judgment in Denbury's favor on Plaintiffs' claim for trespass to pore space is warranted.

### B.        Unjust Enrichment (Claim 13)

Denbury next argues Plaintiffs' unjust enrichment claim is prohibited. Plaintiffs' unjust enrichment claim alleges that Denbury is profiting from the permanent injection of carbon dioxide into Plaintiffs' pore space without legal

---

[3] At the hearing, Plaintiffs' counsel also clarified the predictive nature of Plaintiffs' claims by stating that Plaintiffs "believe that [Denbury is] putting significantly more [Co2] than is reasonably necessary" into the pore space "*with the goal* of permanently storing it there." (Doc. 73 at 24.)

right.[4]  Plaintiffs allege Denbury is profiting in the form of tax credit eligibility.[5]

Denbury argues that a claim for unjust enrichment is not available where the rights

and obligations of the parties are defined by contract. Because contracts exist

between Denbury and Plaintiffs governing oil production on Plaintiffs' land,

Denbury contends that Plaintiffs may not assert a claim for unjust enrichment. In

response, Plaintiffs argue that no contract exists governing Denbury's use of their

pore space, and therefore they may bring a claim for unjust enrichment.

Unjust enrichment is a claim sounding in equity. Such a claim serves "to

prevent or remedy inequitable gain by another." *Assoc. Mgmt. Serv. v. Ruff*, 424

P.3d 571, ¶ 64 (Mont. 2018). The elements of an unjust enrichment claim are: "(1)

a benefit conferred on one party by another; (2) the other's appreciation or

knowledge of the benefit; and (3) the other's acceptance or retention of the benefit

under circumstances that would render it inequitable for the other to retain the

benefit without compensating the first party for the value of the benefit." *Assoc.*

---

[4] As discussed above, Plaintiffs recently filed a Motion to Amend Complaint to add factual allegations to their unjust enrichment claim. The facts are related to Denbury's alleged profiteering from allowing third-party access to Plaintiffs' surface estate. Accordingly, the new allegations are not properly before the Court at this time and this Findings and Recommendation not does operate to dispose of such allegations.

[5] Plaintiffs argue that pursuant to 26 U.S.C. §46Q, Denbury is eligible for tax credits for the carbon dioxide injected into Giacometto Ranch's pore space. Plaintiffs estimate the potential tax credits could exceed $128 million.

*Mgmt. Serv.*, at ¶ 65. A claim for unjust enrichment does not require proof of a wrongful act or conduct; a party need only prove "that a party unjustly gained something of value, regardless of wrongful conduct." *Assoc. Mgmt. Serv.*, at ¶ 65. Additionally, "a person who obtains a benefit by an act of trespass or conversion, by comparable interference with other protected interests in tangible property, or in consequence of such an act by another, is liable in restitution to the victim of the wrong." Restatement (Third) of Restitution and Unjust Enrichment § 40.

Under Montana law, "the legal remedy of unjust enrichment is unavailable where there is a legal contract between the parties." *Ryffel Family Partnership, Ltd. v. Alpine Country Construction, Inc.*, 386 P.3d 971, ¶ 32 (Mont. 2016). If a valid and enforceable contract "defines the obligations of the parties as to matters within its scope," an unjust enrichment claim is not warranted. *Assoc. Mgmt. Serv.*, at ¶ 67 (quoting Restatement (Third) of Restitution § 2(2)). However, unjust enrichment may apply where the underlying contract is "invalid, voidable, or otherwise ineffective to regulate the parties' obligations." *Assoc. Mgmt. Serv.*, at ¶ 67 (quoting Restatement (Third) of Restitution § 2(2) cmt. c.).

The Montana Supreme Court has explained that while unjust enrichment does not require "proof of a wrongful act or conduct[,]" it cannot be asserted where "a valid contract defines the obligations of the parties as to matters within its

scope[.]" *Assoc. Mgmt. Serv.*, at ¶¶ 66-67 (internal quotations omitted). The court further expounded that unjust enrichment is applicable "only when a party renders a 'valuable performance' or confers a benefit upon another under a contract that is . . . ineffective to regulate the parties' obligations." *Assoc. Mgmt. Serv.*, at ¶ 67.

Plaintiffs' unjust enrichment claim alleges that Denbury has profited and will continue to profit from exclusively and permanently injecting carbon dioxide into the Bell Creek Field without legal right. Plaintiffs also claim that none of the oil and gas agreements concerning Denbury's right to produce oil govern the parties' rights and obligations regarding the permanent sequestration of carbon dioxide into the pore space. Rather, Plaintiffs allege that Denbury's pore space activities exceed the scope of any authority granted by the agreements and Denbury has not compensated Plaintiffs for its unauthorized use of their property. Consequently, Plaintiffs argue Denbury has been unjustly enriched by obtaining a benefit to which Plaintiffs are entitled. Plaintiffs also argue that discovery on their unjust enrichment claim remains to be developed.

The 1966 oil and gas lease grants to the lessee:

for the sole and only purposes of surveying by geological, geophysical and all other methods, mining and operating for oil, gas and other hydrocarbons, and all other minerals or substances, whether similar or dissimilar, that may be produced from any well drilled by lessee on the leased premises hereinafter described, and laying pipelines, and building tanks, power stations and structures thereon to produce, save and take

care of said products[.]

The Unit Agreement provides, in pertinent part:

> Except as otherwise specifically provided herein, the exclusive right, privilege, and duty of exercising any and all rights of the parties hereto, including surface rights, which are necessary or convenient for prospecting for, producing, storing, allocating, and distributing the Unitized Substances [oil and gas] are hereby delegated to and shall be exercised by the Unit Operator as herein provided. Acceptable evidence of title to said rights, privileges, and obligations of Unit Operator. Nothing herein, however, shall be construed to transfer title to any land or to any lease or operating agreement, it being understood that under this Agreement, the Unit Operator, in its capacity as Unit Operator, shall exercise the rights of possession and use vested in the parties hereto only for the purposes herein specified. . . .

> The Unit Operator shall have the right to inject into the Unitized Formation any substances for enhanced recovery purposes in accordance with a plan of operation approved by the AO, including the right to drill and maintain injection wells on the Unitized Land and completed in the Unitized Formation for said purpose, and the parties hereto, to the extent of their rights and interests, hereby grant to the Unit Operator the right to use as much of the surface of the land within the Unit Area as may be reasonably necessary for the operation and the development of the Unit Area hereunder.

(Doc. 43-8 at 12, 16-17.)

Although neither the lease nor the Unit Agreement appear to convey to Denbury the right to permanently inject carbon dioxide into Plaintiffs' pore space, Plaintiffs' unjust enrichment claim must fail due to the evidentiary and ripeness issues similarly fatal to its trespass to pore space claim. Even if the language in the agreements supports Plaintiffs' contention that Denbury does not have the right to

use Plaintiffs' pore space for the permanent storage of carbon dioxide,[6] Plaintiffs

have not provided evidence establishing a genuine issue exists as to whether

Denbury is in fact permanently storing carbon dioxide.

The Court acknowledges that if Denbury is using Plaintiffs' pore space for

reasons not agreed to, and thereby committing a trespass, Plaintiffs, as the injured

party, "may seek restitution of the unjust enrichment[.]" *Robertus v. Candee*, 670

P.2d 540, 542 (Mont. 1983). *See also,* Restatement (Third) of Restitution and

Unjust Enrichment § 40 ("a person who obtains a benefit by an act of trespass . . .

is liable in restitution to the victim of the wrong."). However, where no trespass

claim is viable because there is no evidence Denbury is currently permanently

storing carbon dioxide, no restitution is available.

Denbury has also properly demonstrated that it is not receiving tax credits

for the alleged carbon sequestration. Although Denbury acknowledges that it

purchases carbon dioxide for its EOR activities in the Bell Creek Field, (Doc. 52-

2), it has provided a sworn declaration that "Denbury has never applied for or

received 45Q tax credits for carbon sequestration at Bell Creek or any other EOR

---

[6] Denbury does not argue that it has the right to permanently sequester carbon dioxide under the agreements. *See* Doc. 65-1 at ¶ 1 ("Denbury does not contend that it has the right under the oil and gas leases, surface use agreements, or the Bell Creek Unit Agreement to operate facilities to permanently store large volumes of carbon dioxide.")

project operated by Denbury." (Doc. 65-1 at 2.) Plaintiffs have not provided

sufficient evidence to refute Denbury's sworn declaration.

Plaintiffs merely claim that Denbury has "positioned itself to obtain

hundreds of millions of dollars in 45Q federal tax credits." (Doc. 59 at 27.)

Plaintiffs provide no support for this conclusory statement. They base this assertion

on an EERC report stating that one goal of its research is to "facilitate the

establishment of a technical framework by which carbon credits can be monetized

for [carbon dioxide] stored in geologic formations." (Doc. 58-1 at ¶ 19.) The

EERC report is not authored by Denbury, is speculative, and fails to refute

Denbury's sworn declaration. Regardless, because Plaintiffs have not adequately

refuted Denbury's evidence that it is not permanently injecting carbon dioxide into

the Bell Creek Field, Plaintiffs claim must fail.

The Court finds Plaintiffs have not presented a justiciable unjust enrichment

claim because it is premised on an unsupported fact, namely that Denbury has

permanently injected carbon dioxide into their pore space. Because it is undisputed

that Denbury is currently engaged in ongoing EOR operations, and it is undisputed

that those operations are in furtherance of the production of oil, there is no factual

support for Plaintiffs' contention that Denbury is presently permanently storing

carbon dioxide. To the extent that Plaintiffs claim Denbury intends not to remove

the carbon dioxide in the future at the conclusion of its EOR operations, such a

claim is based on speculation and is unripe. Permanent sequestration is not an

"actual, present controversy" and the Court "will not act when the legal issue

raised is only hypothetical or the existence of a controversy merely speculative."

*Havre Daily News. LLC v. City of Havre*, 142 P.3d 864, ¶ 19 (Mont. 2006). *See*

*also*, *Montana Right to Life Ass'n v. Eddleman*, 999 F.Supp.1380, 1386 (D. Mont.

1998) ("Federal courts normally ought not resolve issues involving contingent

future events that may not occur as anticipated or that may not occur at all.").

Plaintiffs have not asserted a viable claim for unjust enrichment. Summary

Judgment in Denbury's favor is appropriate.

### C.    Ejectment (Count 16)

Plaintiffs' ejectment claim alleges Denbury is permanently and exclusively

utilizing Plaintiffs' pore space without legal right. (Doc. 43.) Plaintiffs further

allege they are entitled to damages from Denbury in the form of mesne profits in

compensation for Denbury's unauthorized use. Finally, Plaintiffs request the Court

declare that they are entitled to possession of the pore space beneath their property.

Denbury argues Plaintiffs' ejectment claim is improper because they do not

have a superior or exclusive right to use the pore space at issue. Because Plaintiffs

leased the dominant mineral estate, Denbury argues they cannot now claim

exclusive use of the surface estate. In response, Plaintiffs argue they own the surface estate, including the pore space, and Denbury is exceeding its authority to reasonably use the surface estate to produce oil.

Modern common law ejectment is a cause of action "brought against a trespasser in possession of all or a portion of real property for immediate possession of the property based on proof of superior title and the right to immediate possession." *Davis v. Westphal*, 405 P.3d 73, ¶ 17 (Mont. 2017). "In ejectment the question of title is necessary to a resolution of the dispute." *Kootenai Corp. v. Dayton*, 601 P.2d 47, 50 (Mont. 1979). Ejectment damages are available for the lost use of property during the trespass. *Davis*, at ¶ 18 & FN 8 (citing § 27-1-318 (reasonable rental value as general measure of damages for wrongful occupation of land) and finding "restoration damages may also be available as an alternative measure of compensatory damages at law to remedy damage to real property").

As discussed, the Montana Supreme Court has determined the owner of a mineral estate must limit its use of the surface estate, and thus the pore space, to purposes that are reasonable and necessary to the production of oil. *Burlington*, ¶ 26. However, the court has not discussed the surface owner's right to eject an operator from the pore space where a trespass to pore space has taken place. It is

clear, however, that common law remedies may be sought in addition to claims under SODDCA. *Burlington*, at ¶ 33.

Here, Plaintiffs recognize that Denbury has a right to oil development but contend that Denbury's alleged permanent and exclusive carbon dioxide storage is separate and distinct from oil production, and thus is unreasonable and outside of the scope of their rights under the oil and gas agreements. This argument would have merit if it was supported by evidence that Denbury was indeed permanently storing carbon dioxide. *See Fisher*, 29 F.Supp.3d at 646 (declining to grant summary judgment on trespass claim seeking ejectment where questions of fact concerning reasonableness remained to be resolved by jury). As previously discussed, however, Plaintiffs have failed to adequately refute Denbury's sworn declaration that it is not permanently storing carbon dioxide and is instead injecting carbon dioxide into the pore space to produce oil – a practice that is indisputably appropriate. (Doc. 73 at 23.)

Plaintiffs' evidence in support of permanence, the EERC report and the declaration of Mr. Button, purports to establish that the amount of carbon dioxide Denbury is injecting is greater than necessary and therefore indicates Denbury intends to permanently sequester carbon dioxide. (Docs. 59-20, 59-3.) Again, this evidence is speculative and inadequate to refute Denbury's evidence that it is not

currently permanently storing carbon dioxide. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiffs' ejectment claim is not viable. Summary judgment is appropriate.

## IV.    Plaintiffs' Rule 56(d) Motion

Plaintiffs argue that they have identified specific facts critical to the prosecution of their claims for trespass, unjust enrichment, and ejectment. They argue that the identified facts have not yet been discovered, however, due in part to Denbury's refusal to provide information in discovery. Plaintiffs include declarations in their motion purporting to show that the identified facts they seek to discover exist in routinely generated documents and are critical to Plaintiffs' ability to defend partial summary judgment.

A party may bring a motion under Federal Rule of Civil Procedure 56(d) to oppose summary judgment. Pursuant to Rule 56(d),

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)    defer considering the motion or deny it;
>
> (2)    allow time to obtain affidavits or declarations or to take discovery; or

(3)     issue any other appropriate order.

A party seeking relief under Rule 56(d) has the burden to show "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 535 F.3d 822, 927 (9th Cir. 2008). The moving party "must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). Rule 56(d) motions are freely granted where the moving party has not "had any realistic opportunity to pursue discovery relating to its theory of the case" and has "diligently pursued discovery of the evidence." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003) (citations omitted).

As previously discussed, Denbury seeks summary judgment on the claims involving its injection of carbon dioxide into pore space owned by Giacometto Ranch. Plaintiffs argue that the facts critical to it defense of summary judgment on these claims relate to the reasonableness and scope of Denbury's use of the pore space. Plaintiffs additionally seek to discover facts necessary to prove the elements of each claim.

Plaintiffs identify the specific facts they have not yet been able to discover:

the terms, including pricing, of the contractual agreements between Denbury and

third parties relating to the injection of carbon dioxide under Plaintiffs' property,

reservoir simulation models, maps, well logs, porosity, and various data related to

Denbury's carbon dioxide injection operations. (Doc. 60-1 at 11-18.) Plaintiffs

explain that this information will bear on whether Denbury's use of carbon dioxide

exceeds any authority it has to use the pore space. Plaintiffs additionally argue this

information will be used in support of their unjust enrichment claim by showing

Denbury has profited from the alleged permanent injection of carbon dioxide into

the Bell Creek Field.

Plaintiffs also seek to identify Denbury employees who are knowledgeable

about carbon dioxide injection operations on Plaintiffs property in the Bell Creek

Field, carbon dioxide procurement for Denbury's operations on Plaintiffs property

in the Bell Creek Field, movement of carbon dioxide through pore space upon,

within, and beneath Plaintiffs' property in the Bell Creek Field, and monitoring,

verification, and accounting of carbon dioxide injected into Bell Creek Field pore

space. (Doc. 60-1 at 18-19.) Plaintiffs explain that discovery on these categories is

critical to their ability to prove and defend their claims of trespass to pore space,

unjust enrichment, and ejectment because they will reveal information related to

the reasonableness and scope of Denbury's injection of carbon dioxide into the

Bell Creek Field.

Because Plaintiffs' unjust enrichment, trespass to pore space, and ejectment claims are based on the theory of permanent sequestration of carbon dioxide, it is essential for Plaintiffs to establish that Denbury is indeed permanently sequestering carbon dioxide in Plaintiffs' pore space. But the facts Plaintiffs seek to discover would only amplify their speculation that Denbury *intends* to permanently store carbon dioxide at the conclusion of its EOR operations.[7] *See* Doc. 60-2 at ¶ 8 (opining that Denbury "intends" to permanently sequester carbon dioxide and is not "expected" to complete a blowdown operation). *Smith v. OSF HealthCare System*, 933 F.3d 859, 864 (7th Cir. 2019) (Rule 56(d) "requires more than a fond hope that more fishing might net some good evidence"). For example, Plaintiffs seek to discover facts related to the volume of carbon dioxide Denbury is inserting in the pore space. Such discovery has no bearing on the outcome of the motion because the fact remains that Denbury is currently injecting carbon dioxide into Plaintiffs' pore space to produce oil – an operation well within Denbury's rights. The amount of carbon dioxide in the pore space, a fluctuating measurement, is incapable of establishing permanent sequestration while Denbury's EOR

---

[7] Plaintiffs motion is supported by the declaration of Mr. Button which the Court has already deemed speculative. (Doc. 60-2.)

operations are ongoing.

The issue of permanent carbon dioxide sequestration will not ripen with further discovery; the issue will ripen, if at all, with time. If Denbury discontinues its EOR operations and chooses instead to permanently sequester carbon dioxide in Plaintiffs' pore space, then at that time Plaintiffs' claims would be ripe for adjudication.

Because additional discovery in this matter would not alter the outcome of Denbury's summary judgment motion, Plaintiffs Rule 56(d) motion must fail. *Midbrook Flowerbulbs Holland B.V. v. Holland America Bulb Farms, Inc.*, 874 F.3d 604, 620 (9th Cir. 2017) (Rule 56(d) motion properly denied where further discovery would not preclude summary judgment). For the foregoing reasons the Court finds Plaintiffs Rule 56(d) motion should be denied.

## V.    Conclusion

Having considered the Defendants' Motion for Partial Summary Judgment (Doc. 50), the Court determines that summary judgment is warranted.

Accordingly, **IT IS RECOMMENDED** that Defendants' Motion for Partial Summary Judgment (Doc. 50) be **GRANTED** and Plaintiffs' Rule 56(d) Motion (Doc. 60) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy

of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 15th day of July, 2020.

_____
Kathleen L. DeSoto
United States Magistrate Judge