IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GIACOMETTO RANCH INC., et al., | CV 16-145-BLG-SPW |
| Plaintiffs, | |
| vs. | ORDER |
| DENBURY ONSHORE LLC, et al., | |
| Defendants. | |

On August 25, 2023, Defendant Denbury Onshore, LLC ("Denbury") filed 10 motions in limine. (Docs. 196, 199, 201, 203, 205, 208, 210, 213, 215, 217). On October 18, 2023, Plaintiffs Robert Giacometto, Thomas Giacometto, and Giacometto Ranch, Inc. filed a combined response to Docs. 199, 201, 203, and 210 (Doc. 237); a combined response to Docs. 205, 213, and 215 (Doc. 238); and individual responses to Docs. 196, 208, and 217 (Docs. 239, 240, 241). On November 9, 2023, Denbury filed 10 replies corresponding to each original motion. (Docs. 244–253).

The Court finds Plaintiffs' grouping of the motions makes sense given the facts each concerns, and thus the Court will issue orders on the motions according to how Plaintiffs organized them. This order will address the motions at Docs. 199, 201, 203, and 210. Successive orders will address the other motions.

1

For the following reasons, the Court grants Doc. 199, denies in part and grants in part Doc. 201, and denies Docs. 203 and 210.

## I.    Legal Standard

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. *Agan v. BNSF Ry. Co.*, CV 19-83-BLG, 2022 WL 3700052, at *1 (D. Mont. Aug. 26, 2022). The Court shall exclude evidence in limine only if the evidence is inadmissible on all potential grounds. *Id.* Unless evidence meets this high standard, the Court shall defer evidentiary rulings until trial so that questions of foundation, relevancy, and potential prejudice are resolved in proper context. *Id.*

The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Rulings on motions in limine are provisional, and the trial judge may always change their mind during trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

A motion in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, CV-07-170-BLG, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010). "A motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for

filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013).

## II. Analysis

### A. Motion in Limine 199: Air Quality

Denbury first asks the Court to prohibit evidence of Denbury's alleged violations of the Clean Air Act ("CAA") or Denbury's Air Quality Permit, or of emissions from diesel engines or tanks at the Minnelusa 3 well site. (Doc. 200). Denbury argues exclusion is warranted because the First Amended Complaint ("FAC") does not allege violations of the CAA, Plaintiffs do not identify damages related to air quality in their Preliminary Pretrial Statement, Plaintiffs have not brought a CAA citizen suit, and Plaintiffs' expert, Shane Bofto, does not state to a reasonable degree of certainty that the use of the diesel engine to occasionally run the pump at the Minnelusa 3 well or the presence of the tanks caused a measurable decrease in air quality that affected Plaintiffs. (*Id.*).

Plaintiffs generally respond that the Court should allow the contested evidence because the harm to air quality and the air permit violations are "material evidence of the nuisance" Denbury is "maintaining on the Giacometto property." (Doc. 237 at 26). As for the absence of damages from deteriorated air quality in Plaintiffs' Preliminary Pretrial Statement, Plaintiffs assert that Montana law does not

require evidence of damage to the property or its economic value to claim nuisance. (*Id.* at 23).

The Court grants the motion because the FAC does not contain any allegations that Denbury's operations deteriorated the air quality and that the deteriorated air quality interfered with Plaintiffs' use and enjoyment of their property.   Such allegations are necessary for Plaintiffs to assert at trial that Denbury is liable for nuisance based on deteriorated air quality. *See Martin v. Artis*, 290 P.3d 687, 690 (Mont. 2012) ("while it is possible under § 27-30-101(1), MCA, for 'anything' to constitute a nuisance, a nuisance claim must nonetheless plead a factual foundation that satisfies the governing legal standards.").   The requirement that the operative pleading contain allegations of the harm that constitutes a nuisance is separate from the damages issue raised with respect to the Preliminary Pretrial Statement.·

As such, the Court grants the motion and prohibits all evidence of alleged harm to air quality on Plaintiffs' property by Denbury.

B.      *Motion in Limine 201: Evidence of Defect in the Mechanical Integrity of the Minnelusa 3 Injection Well*

Denbury next asks the Court to exclude any evidence of a defect in the mechanical integrity of the Minnelusa 3 injection well because Plaintiffs failed to disclose any expert testimony concluding that such a defect exists and determining its cause with the degree of certainty required under Montana law.  (Doc. 202 at 8). Denbury argues that such expert testimony is required to establish causation, and

4

only expert testimony "that it is 'more likely than not' that the alleged wrongdoing caused the plaintiff's injury" is admissible. (*Id.* at 7–8 (citing *Frederick v. Billings Partners, LLC*, CV 21-07-BLG, 2022 WL 18860318, *3 (D. Mont. Nov. 30, 2022))). In the absence of expert testimony that meets this standard, all other evidence of the defect is prohibited from coming in. (*Id.* at 8–9). Alternatively, Denbury argues the Court should prohibit Plaintiffs' experts, Bofto and Michael Meredith, from opining or insinuating that the Minnelusa 3 injection well's mechanical integrity is compromised because neither of their reports contain such an opinion and neither are qualified to provide such an opinion. (*Id.* at 11–12).

Plaintiffs respond that Denbury's argument "ignores significant evidence [of a defect in the well] in the record that comes from Denbury itself" and outlines various circumstantial evidence that they argue indicates a lack of mechanical integrity. (Doc. 237 at 11–17). As to the qualifications of their experts, Plaintiffs argue Bofto is qualified to testify to the mechanical integrity of the Minnelusa 3 injection well because he is a member of the Society of Petroleum Engineers. (*Id.* at 29). Plaintiffs also note Bofto served as the project manager and lead engineer for Montana Board of Oil and Gas's ("MBOG") application to the Environmental Protection Agency for jurisdictional primacy in regulating underground injections for carbon sequestration in Class VI wells, and part of that application involved mechanical integrity tests. (*Id.*). Plaintiffs do not challenge Denbury's assertion that

Meredith is not qualified to opine on the mechanical integrity of the Minnelusa 3 well.

As an initial matter, the Court finds that Denbury incorrectly applies the "more likely than not" standard for the admissibility of an expert opinion because that standard is from Montana Rule of Evidence 702, which does not apply in federal court. In a diversity case, the admissibility of evidence is governed by the Federal Rules of Evidence, unless there is a showing that a state rule of evidence is "intimately bound up with the state's substantive decision making." *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995); *Felman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). Absent such a showing from the parties, the Court applies the Federal Rules of Evidence.

*Frederick*'s invocation of the more likely than not standard does not change the Court's conclusion here because *Frederick* was analyzing the sufficiency of the expert opinion to prove causation on a summary judgment motion. 2022 WL 18860318, at *5 (granting summary judgment on a negligence claim where the expert had only opined that treatment "may have" reduced the risk of frequent urine infections and helped the plaintiff live longer). The motion in front of the Court is motion in limine. The Court may not consider the sufficiency of evidence to prove a claim.

Accordingly, the Court applies Federal Rule of Evidence 702, which governs the admissibility of an expert opinion. An expert opinion is admissible if the expert is qualified, and the expert's testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–91 (1993). The proponent of the testimony has the burden of establishing by a preponderance of the evidence that expert testimony is admissible. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Since the Court rejected Denbury's assertion that experts must testify to a more likely than not standard for their opinion to be admissible, Denbury's remaining challenge is only to Plaintiffs' experts' qualifications.

A witness is qualified if they have the requisite knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Experience may qualify an expert so long as it is obtained in a practical context. Victor J. Gold, Fed. Prac. & Proc. Evid. § 6264.1 (2d ed. 2023). Membership in a professional society also is common evidence that an expert is qualified, though not dispositive. *Id.* "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not admissibility." *Id.* (citing *United States v. Bilson*, 648 F.2d 1238, 1239 (9th Cir. 1981)).

As to whether Plaintiffs' experts are qualified, the Court finds Plaintiffs did not meet their burden to show Meredith is qualified to opine on any defects in the

mechanical integrity of the well, as Plaintiffs put on no evidence to support such a qualification. The Court grants the motion as to Meredith.

The Court finds Plaintiffs met their burden to show Bofto is qualified. Denbury complains that Plaintiffs have not disclosed a petroleum engineer, which Denbury seems to indicate would be the only kind of professional who would be qualified. (Doc. 202 at 4). But Bofto is a member of the Society of Petroleum Engineers, presumably because that professional society deemed him qualified as a petroleum engineer. Further, Bofto has experience with mechanical integrity testing through his MBOG work. Bofto's resume describes him drafting an application for MBOG to gain jurisdictional primacy over underground injecting operations, one of the "core element[s]" of which was mechanical integrity tests. If one of the core components of the application was the test at issue here, Bofto must have enough experience with them to be the project manager and lead engineer on the application. The extent of that experience goes to weight and can be challenged by Denbury on cross examination.

The Court also finds Bofto's testimony reliable and relevant to the issue of the structural integrity of the Minnelusa 3 well, since neither are challenged, and therefore Bofto can testify.

Importantly, Bofto's testimony is limited to the findings and conclusions about any potential defect contained in his report. Fed. R. Civ. P. 26(a)(2)(B)(i)

(requiring an expert to include a "complete statement of all opinions the witness will express and the basis and reasons for them"). *See also G. v. Haw., Dept. of Human Servs.*, 703 F. Supp. Ed 1112, 1123 n.8 (D. Haw. 2010) ("[e]xperts may only testify in accordance with their expert reports."). Whether Bofto's testimony, as limited by the contents of his report, is sufficient to show there was a defect under Montana law could have been a proper question on summary judgment, but Denbury never raised it. The issue therefore is reserved for the jury.

Accordingly, the Court grants Denbury's motion as to Meredith's testimony on the mechanical integrity of the well and denies the remainder of the motion with the clarification that Bofto's testimony on matters concerning the integrity of the Minnelusa 3 well is limited to the findings and conclusions contained in his report.

C.   *Motion in Limine 203: Evidence that the Minnelusa 3 Well Casing Leaked or of Any Contamination of the Groundwater by the Minnelusa 3 Well*

Denbury's next motion in limine asks the Court to exclude any evidence of or request for the need for or the cost of a groundwater monitoring system to investigate and monitor for potential impacts to groundwater from the Minnelusa 3 well. (Doc. 203).   Denbury argues exclusion is warranted because Plaintiffs presented no evidence or qualified expert opinion of a leak (from the failed mechanical integrity test/a defect) or contamination. (*Id.*).

Denbury's request would require the Court to find that no fact demonstrates there was a leak or contamination, and therefore certain damages are not warranted. Again, whether Plaintiffs have provided sufficient evidence to prove a claim or the necessity for specific damages is a question for either the Court on summary judgment or the fact-finder at trial. It is not a matter for a motion in limine.

Denbury also argues that evidence of the need for a groundwater monitoring program should be excluded because, even if there was evidence of a casing leak, there is no basis for concluding that any resulting contaminants would flow uphill to Tom Giacometto's well and that monitoring of that well is necessary. (Doc. 204 at 5). Denbury attacks Plaintiffs' expert Meredith's conclusion that the contaminants "could potentially" travel in unpredictable directions, like uphill to Tom's well, because of the injection pressures as not satisfying the "more likely than not" standard. (*Id*).

As explained above, Plaintiffs' experts' testimony does not need to meet the more likely than not standard from Montana law because it does not apply here. Thus, again, Meredith needs to be qualified on the matter, and his opinions need to be relevant and reliable to be admissible. Denbury does not attack any of these, and therefore his testimony is admissible. Whether the jury believes Meredith's opinion is a question of weight that is inappropriate on a motion in limine. Accordingly, the Court denies the motion.

> **D.**  *Motion in Limine 210: Evidence that Leaks at the Minnelusa 3 Disposal Well Contaminated the Minnelusa Formation or Violated the Clean Water Act*

Denbury's final motion challenges three pieces of evidence related to water contamination. The Court will address each individually.

Denbury's motion first asks the Court to exclude evidence or argument that leaks at the Minnelusa 3 well contaminated the Minnelusa Formation as irrelevant. (Doc. 210). Denbury primarily asserts that Plaintiffs have not brought a claim for alleged contamination of the Minnelusa Formation and therefore cannot seek damages for any contamination. (Doc. 211 at 3). Denbury also contends that even if Plaintiffs asserted as much, they do not have standing to do so because Plaintiffs do not own the water in the Minnelusa Formation, and any contamination from the Minnelusa Formation does not present any imminent harm to Plaintiffs. (*Id.* at 3–4). Denbury details technical evidence it claims shows the impossibility of the injection fluid moving from the Minnelusa Formation to Plaintiffs' well and of any imminent harm to Plaintiffs. (*Id.* at 5–6).

The Court denies this part of the motion. First, though Denbury is correct that Plaintiffs did not allege damages for contamination of just the Minnelusa Formation (and may not be able to, though that is a matter more appropriate on a dispositive motion), Plaintiffs alleged that contamination of the Minnelusa Formation contaminated the well on their property. Thus, evidence of any contamination of the

Minnelusa Formation is relevant to the extent such evidence informs the allegations of contamination of Plaintiffs' well.

Second, as to Denbury's imminent harm argument, Denbury's motion again asks the Court to resolve a question that should have been raised on a pretrial motion or must be decided for the trier of fact, namely whether the evidence is sufficient to show that the contamination would flow toward Plaintiffs' well and that Plaintiffs' well was contaminated. The reality that Denbury asks for a substantive ruling is emphasized by the fact that the primary case Denbury analogizes to—*Gordon v. Guide Corporation*, No. IP00-1433-C, 2001 WL 1168144 (S.D. Ind. Aug. 21, 2001)—is an order on a motion to dismiss, aka an order on the sufficiency of the allegations in a complaint to state a claim for relief. Further, Denbury's discussion of the location of the Minnelusa Formation in relation to Plaintiffs' well and the flow rate of the aquifer is an attempt to show the impossibility that Plaintiffs' evidence can prove their claim, not the admissibility of that evidence in the first place. Accordingly, the Court denies this portion of the motion.

Denbury's motion next asks for the Court to exclude any evidence of violations of two regulations promulgated pursuant to the Safe Drinking Water Act ("SDWA") that Bofto mentions in his report.[1] (Doc. 210). Bofto's report references

---

[1] Denbury's motion seeks exclusion of evidence of violations of Clean Water Act regulations. (Doc. 210). However, Denbury's briefing does not discuss the Clean Water Act. Rather, Denbury focuses its argument on the SDWA regulations. (Doc. 211 at 11–12; Doc. 252 at 2). Bofto's report also focuses on potential violations of SDWA regulations. (*See, e.g.* Doc. 242-1 at 16). As

two SDWA regulations, 40 C.F.R. §§ 144.6(b)(1)[2] and 144.14. The former defines

Class II injection wells, which the Minnelusa 3 well is permitted as. (Doc. 242-1 at

6). A Class II well is defined, in relevant part, as a well which injects fluids

> [w]hich are brought to the surface in connection with natural gas
> storage operations, or conventional oil or natural gas production and
> may be commingled with waste waters from gas plants which are an
> integral part of production operations, *unless those waters are classified
> as a hazardous waste at the time of injection.*

40 C.F.R. § 144.6(b)(1) (emphasis added). Class II wells are used exclusively to

inject fluids associated with oil and gas production. *See* Class II Oil and Gas Related

Injection Wells, Environmental Protection Agency, https://perma.cc/CJ8R-PN7M

(last accessed February 16, 2024).

Class IV injection wells are used to inject hazardous or radioactive wastes into

or above a geologic formation that contains an underground source of drinking

water. 40 C.F.R. § 144.6(d). *See also* Class IV Sallow Hazardous and Radioactive

Injection Wells, Environmental Protection Agency, https://perma.cc/Z5BU-VV7K

(last accessed February 16, 2024). 40 C.F.R. § 144.14 outlines the requirements for

wells that inject hazardous waste.

Bofto appears to assert that hazardous wastes (acetone, MEK, and MIBK)

were found in the Minnelusa 3 well tanks and that, if injected into the Minnelusa 3

---

such, the Court presumes Denbury meant to ask the Court to exclude evidence of violations of
SDWA regulations.
[2] Bofto's report cites to 40 C.F.R. § 144.6(b)(1)(b), but the regulation only extends to subsection
(b)(1).

well, would be in violation of the aforementioned regulations because a Class II disposal well (like the Minnelusa 3 well) is not permitted for injection of hazardous wastes. (Doc. 242-1 at 14, 16). Rather, only Class IV wells may have hazardous wastes injected into them, and such operations must comply with the requirements outlined in 40 C.F.R. § 144.6.

Denbury argues that the Court should exclude all evidence of alleged violations of these regulations because the SDWA does not create a private right of action for the recovery of compensatory damages, and because evidence of the violations has no probative value in determining whether the casing leaked. (Doc. 211 at 11–12). Plaintiffs seem to argue that Denbury's alleged violation of the regulations are evidence that Denbury's conduct was ultrahazardous, not only because the wastes in the tanks are classified as hazardous but also because Denbury violated the terms of a permit intended to control the types of wastes injected into its well. (Doc. 237 at 20).

The Court agrees with Plaintiffs that evidence of Denbury's alleged violation of the SDWA regulations is relevant to Plaintiffs' nuisance claim, to the extent Plaintiff can show that a leak contaminated the Minnelusa Formation which in turn contaminated their well or otherwise harmed their use and enjoyment of their property, because the evidence supports their assertion that the injection of hazardous wastes in violation of the federal rules for the injection of those kinds of

14

wastes is an ultrahazardous activity. The Court does not find that such evidence would be confusing to the jury; rather, it would put Denbury's alleged conduct in context of what the Environmental Protection Agency has deemed safe enough to permit and too dangerous to permit. Further, Plaintiffs are not seeking damages for the alleged violations, so Denbury's private action argument is inconsequential.

With respect to punitive damages, the Court also finds the evidence relevant because it demonstrates Denbury's alleged disregard for the rules that would make its operations non-hazardous. Though such evidence does not speak to Denbury's intent to harm Plaintiffs specifically, it could support a claim that Denbury intentionally disregarded the precautions the federal government determined are necessary to keep Plaintiffs' source of water safe.

Accordingly, the Court denies this portion of Denbury's motion.

Though not mentioned in Denbury's motion, Denbury's brief last asks the Court to exclude evidence that the injections were not reported to MBOG or allegedly violated Denbury's MBOG permit and the EPA aquifer exemption because such evidence is not relevant to any issue. (Doc. 211 at 11–12). As to punitive damages, Denbury argues that whether the injections were reported or violated the permit has no bearing on whether Denbury intended to injure Plaintiffs. (*Id.*).

The Court denies this portion of the motion for the same reasons it denied the portion of the motion concerning the SDWA regulations. Violations of government

standards for a dangerous activity can be evidence that Denbury's alleged conduct was ultrahazardous, to the degree its conduct interfered with Plaintiffs' use and enjoyment of their property.

## III.   Conclusion

IT IS SO ORDERED:

(1) Denbury's Motion in Limine on Alleged Air Quality Violations (Doc. 199) is GRANTED.

(2) Denbury's Motion in Limine on Evidence of A Leak in Minnelusa 3 Well Casing (Doc. 201) is GRANTED as to Meredith's testimony on the mechanical integrity of the well and DENIED as to the remainder of the motion.

(3) Denbury's Motion in Limine on Evidence Regarding Groundwater Monitoring (Doc. 203) is DENIED.

(4) Denbury's Motion in Limine on Evidence that Leaks at Minnelusa 3 Disposal Well Contaminated Formation (Doc. 210) is DENIED.

DATED the 27th day of February, 2024.

_Susan P. Watters_
SUSAN P. WATTERS
U.S. DISTRICT JUDGE